# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JAMES KWASNIESKI,         )
                                      )
    Appellant-Below/Appellant,   )
                                      )
                                      )
    v.                                )      C.A. No. N23A-06-011 CEB
                                      )
STATE OF DELAWARE,        )
DEPARTMENT OF TRANSPORATION, )
                                      )
    Employer-Below/Appellee,    )
                                      )
    and                            )
                                      )
MERIT EMPLOYEE          )
RELATIONS BOARD,         )
                                      )
    Appellee.                )

Submitted:  April 12, 2024
Decided:  June 25, 2024

## ORDER

*Appeal from a Decision of the Merit Employee Relations Board,*
**AFFIRMED.**

Lance Geren, Esquire, O'DONOGHUE & O'DONOGHUE, LLP, New Castle, Delaware. *Attorney for the Appellant.*

Kenneth S. Feaster, Esquire, George T. Lees, III, Esquire and Victoria R. Sweeney, Esquire, DEPARTMENT OF JUSTICE, Wilmington, Delaware. *Attorneys for the Appellees.*

**BUTLER, R.J.**

1.      At the time of the acts giving rise to this proceeding, Appellant James Kwasnieski ("Appellant") was employed by the State of Delaware, working for DELDOT as an Engineering and Planning Survey Technician III.  His particular work group at DELDOT had the responsibility to audit the quality of "hot mix" prepared by road contractors who were laying down the mix on Delaware roads.  Apparently, a good part of that job involved going to the contractor's hot mix preparation site, testing the quality of the mix, and recording the results before the mix was brought to the installation site.

2.      Apparently this hot mix gets mixed at divergent hours depending on the need.  So the work hours for the job of analyzing the mix could vary.  The "official" hours were 8 a.m. to 4 p.m.  But since mixing can occur much earlier in the day, it is not unusual for the technician's shifts to vary accordingly.

3.      The focus of this appeal is Appellant's time entries for the period December 6 to December 18, 2021.   That record shows that his "normal" schedule ran from 8 a.m. to 4 p.m., but that he often reported to the contractor's site between 5 a.m. and 8 a.m., and sometimes worked past 4 p.m.[1]  He duly recorded his time and, where appropriate, he sought "overtime" pay for the relevant hours.

---

[1] R. at 22.

1

4.     "Overtime Pay," under the Merit System Rules, is paid at a rate of 1.5 times the employees' regular rate of pay.[2]  There is no dispute that Appellant received overtime pay when requested.

5.     There, is, however, another classification of pay under the Merit System called "Call-Back Pay."[3]  Call-back pay is paid at the overtime rate, but the "minimum total payment is equivalent to four times their regular straight time hourly rate."[4]  Obviously, "call-back pay" represents a substantial premium over overtime pay.

6.     Appellant and the technicians at DELDOT understood the need for flexibility in their work hours and had established a system for settling who would work when.  Overtime was apparently plentiful, to the point that supervisors would have to assign work in order to equitably distribute overtime so that everybody had their chance to earn extra income.  The technicians were advised at the close of each workday which jobs they should report to the following day.

---

[2] Merit System Rule at 4.13.1.  This rule is codified in the Delaware Administrative Code and available online on the Merit Employee Relations Board's ("MERB") website. *See* 19 Del. Admin. C. § 3001-5.13.1; State of Delaware Merit Rules (Feb. 1, 2018), https://merb.delaware.gov/wp-content/uploads/sites/131/2018/03/2018-Revised-Merit-Rules-complete.pdf.  The Court will reference the rules as they appear on the MERB's website as "Merit System Rule _".
[3] Merit System Rule 4.16.
[4] *Id.* at 4.16.1.

2

7.      The plan was not iron-clad, however.  The supervisors would not necessarily have the next days' work in hand when the shift ended.  In such cases, the technicians were given a hotline to call to get the next day's work hours and assignments.  None of this was new or unusual and is not the source of the discontent expressed in this appeal.

8.      On the evening of December 14, 2021, Appellant finished work without a schedule for the next day.  As was the common practice, he called the hotline during the evening and was given his assignment for the 15th, which, not unusually, began at 6:30 a.m.  Appellant went as directed and completed the tasks assigned.

9.      What was unusual was that, when Appellant submitted his time record for December 15, he requested 2.5 hours of "Call-Back Pay."  DELDOT paid him overtime pay for the 2.5 hours but disagreed that he had been "called back" to work and therefore denied him "Call-Back Pay."  A grievance ensued, it was heard by the Merit Employee Relations Board ("MERB"), which upheld the decision by DELDOT and denied the grievance.  This appeal followed.

10.     Appellant's sole claim is that he was "called back" by his supervisor to come to work the next day before his regular scheduled start time of 8 a.m. and so therefore he was entitled to "call-back pay."[5]

---

[5] *See* Appellant's Opening Br., Trans. ID 71924047 (Feb. 1, 2024).

11. The only issue to be resolved is whether being given your work assignment hours for the next day via a hotline call – a work procedure long in practice within the work group – constitutes a "call-back" under the Merit System's work rules. The MERB concluded it did not. Even Appellant recognizes that MERB's interpretation of the rules it administers is entitled to deference and will only be reversed when it is "clearly wrong."[6]

12. Appellant says his case fits the definition of call-back pay because call-back pay is defined as "FLSA-covered employees who have left the work site at the end of their scheduled shift and are called back for overtime service…"[7] Appellant argues he left work on December 14, called the hotline number that evening and was told by his supervisor that his shift the following morning would begin at 6:30 a.m., not 8 a.m. as scheduled, constituting overtime service. This rather inventive argument finds some comfort in logic, but little in common sense.

13. And even the logic is suspect. For example, the Merit rule refers to being "called back for overtime service," but Appellant's overtime on December 15 occurred because he worked past 4 p.m. that day, not because he started early. He

---

[6] *Id.* at 5 (*citing Avallone v. State/Dep't of Health & Soc. Servs*, 14 A.3d 566, 570 (Del. 2011); *Ward v. Dep't. of Elections*, 977 A.2d 900, 2009 WL 2244413 (Del. July 27, 2009) (TABLE)). *See also Stanford v. State Merit Empl. Relations Bd.*, 44 A.3d 923, 2012 WL 1549811, at *3 (Del. May 1, 2012) (TABLE).

[7] Merit System Rule 4.16.1.

4

was not called back to work overtime on December 15. And the term "call-back" sounds to the lay reader like a call to return in light of some sort of emergency or unusual circumstance, not the routine scheduling of work hours. Appellant's construction eliminates the "back" in "call-back" and would require call-back pay for any change in "normal" work hours. A change in the start time may be what overtime is for, it is not what "call-back" is for.

14.     Appellant cites no case in which such a tortured reading of the rules has been upheld, and the Court sees little reason to do so here. The technicians and DELDOT have developed a workable system to staff DELDOT's needs, with overtime available to staff as needed for its mission. MERB, whose special expertise includes matters of wages and hours, was not "clearly wrong" to hold that merely setting a flexible, daily work schedule does not implicate the call-back pay provisions. The Court finds no error in the ruling by MERB and Appellant's claim is therefore denied and the decision of the Merit Employee Relations Board is **AFFIRMED.**

**IT IS SO ORDERED**.

/s/ Charles E. Butler
Charles. E Butler, Resident Judge

5